Mr. Stiller. Good morning, and may it please the Court. Robert Leo suffered a full-blown search of his backpack while he was the subject of an investigative detention based on his being possibly armed in a suspected burglar. There was no warrant, and it's our position on appeal that there was no applicable established exception to the Fourth Amendment's warrant requirement. Working from the District Court's denial of Leo's suppression motion, it analogized the facts of this case to those that were before the Supreme Court in Michigan v. Long, and then essentially extended Long to say that the search of Leo's backpack was some kind of permissible protective search. It's our position that the District Court overexpanded Long by its absence of focus on the crucial component of a weapon's accessibility. And by accessibility, I don't mean what this Court in Tejada referred to as accessibility that's inconceivable squared. I mean real accessibility that threatens an officer's safety. But that analysis in a Terry stop plays out a little bit differently because the presumption is that at the conclusion of the stop, if there's no probable cause that develops, the suspect is going to be free to go and reacquire access to the container. Here, a backpack in Katie, a briefcase. It seems to me the extension that you're referring to has already occurred in the Katie case. I believe Katie, during the investigative stop, was messing with his briefcase, which is a form of accessibility somewhat similar to Long, where the erratic motorist was headed towards the passenger compartment of the car. Right, but the officers removed the briefcase from the suspect for the duration of the stop, and so it was not accessible to him at the time of the search. Was Katie in cuffs? Katie was not in cuffs at the time. Long was not. He was unrestrained and going for the passenger compartment of the car, and that's the accessibility I'm getting at. Leo, of course, at all times, was handcuffed. The backpack had been removed from his custody and control. And the other suspect was also in cuffs, correct? Yes, and the police were playing, for lack of a better word, man-to-man coverage. Two officers, two suspects. In response, Judge Sykes, to your concern shared by the District Court about the possible inevitable return of the backpack to Leo, I think the perhaps unpleasant but constitutional reality is that if reasonable suspicion dissipated, then Leo was no longer a suspected wrongdoer, and as someone no longer suspected of wrongdoing, he had a constitutional right to go on about his business and to take his with the dispatcher frequently during the entire episode that there was a gun in the backpack. Correct. They weren't going to give it back to him so that he could go into the Head Start Center with it. What was the state of Wisconsin law concerning possession of firearms at this time if you didn't have a felony conviction? This was post-concealed carry. So in other words, on the date in question, a citizen could have permission from the state to carry the weapon in concealed fashion, which kind of takes us in somewhat responsive to your question, Judge Sykes, and I'm pleased to see Judge Hamilton, because this kind of takes us into the land that Judge Hamilton's concurrence in U.S. v. Williams hinted at. Okay, there might be a gun in the backpack, but the gun in the backpack isn't itself necessarily a crime. And so if we don't have probable cause that some crime, whether it be burglary, whether it be unlawful possession of the firearm, or some other crime, then Leo at some point would have become a non-wrongdoer, free to go on about his We don't know. We don't know. I think it's also important to note that the police weren't helpless here. They had the ability to continue investigating within the boundaries of the Fourth Amendment. Surely if during the course of that lawful further investigation, cause of some sort had ripened, then maybe the backpack would have been searched, maybe the gun would have been seized. By my sense of the record, about 20 minutes passed between what we contend was the unlawful search and the report back that no burglary had occurred. So in other words, had they not gone, in Officer Seeger's words, straight for the zipper, there was this period of time where Leo remained handcuffed, Leo remained under police control, the backpack remained separate from him, when law enforcement had a variety of investigative tools available to it that may have confirmed suspicions, dispelled suspicions. The situation was more fluid than I think Judge Clavert assumed when he postulated that, oh my goodness, they'd give the gun back to the suspected burglar. When did the officers learn in this process about Leo's prior felony conviction? That's a good question. I believe the police reports are part of the record in this case, and reviewing them yesterday, Officer Seeger's chronology was he searched the backpack, he found the gun. After finding the gun, he asked Leo, are you a felon? Leo responded yes, and after finding the gun and Leo self-admitting his prohibited status, Seeger then contacted dispatch, from which confirmation of Leo's prohibited status was known. I guess the key point from our perspective is that at the time of the search, there was no information available to the officers that Leo was any kind of prohibited person. Did they have probable cause to arrest for the burglary based on what the witness was reporting, and the exact matched description? I believe not at all. Why not? They've got a very detailed description of the suspects from the caller, who then calls back and says, one of them's now changed clothes, the clothing matches to a tee, he's carrying the backpack, they're in the vicinity, and the caller calls back and says, I'm watching you, you've got the right guys. There's no question they had the right guys. I think the question is, at that point, was there probable cause that a burglary or any other crime had occurred back at the private property? That's what the caller is reporting. So they're entitled to take the caller at his word. An anonymous report? That's part of the issue, and along with that is that it's a report that a crime has been committed. Certainly that created a reasonable suspicion and a basis to detain, which we've never contested. But I don't think it gave probable cause to arrest and accuse the citizen of a burglary, and I know it's not directly germane to the analysis. We know, in fact, that no burglary occurred. We've pointed out that I'm not sure that the government has yet to articulate an established and well-delineated exception to the warrant requirement that applies here. Instead, the government has sort of gone with the idea that, circumstantially, this was reasonable. As we've pointed out, conversationally, it may well have been reasonable. Constitutionally, unless it falls within an established exception, it's unlawful, and I think that's our case. The government is also suggesting that this should be one of those Fourth Amendment violations that doesn't result in suppression. We disagree pretty strongly for two reasons. One is that, even as the exclusionary rule has contracted through various judicial decisions, I don't think that it's ever been deemed unavailable to a case like this one, in which the challenged Fourth Amendment conduct was solely the product of an exercise of law enforcement judgment, without any connection to any kind of judicial action whatsoever. And then we've also got the idea that Officer Seeger testified before the magistrate judge that Robert Leo gave unprovoked, repeated consent, and the judge deemed that version of events to be incredible. So I think this would be a case in which a Fourth Amendment violation should have the exclusionary rule attached to it as a means of deterring police conduct. Thank you. All right, thank you, Mr. Stiller. Mr. Koenig. May it please the Court, good morning. My name is Jonathan Koenig. I appear on behalf of the United States this morning. I'd like to dispel, if I can, the notion that I'm here from the government to blow up established Fourth Amendment law  The way I see our argument, it's rooted very firmly in both Terry itself and Michigan v. Long, which the Court has already discussed with opposing counsel. Terry indicated, of course, established a standard for temporary detentions, but it also acknowledged this idea of a protective search and said that limitations on that concept would have to be developed in the concrete, factual circumstances of individual cases. Is it your contention, then, that the contents of the backpack posed an immediate threat to officer safety at the time it was searched? Our principal argument has to do with accessibility in the way that's understood by Judge Colbert and Michigan v. Long. Let me try asking my question again. Is it your contention that the contents of the backpack posed an immediate threat to officer safety when Leo and the other suspect are both cuffed and in control of the officers? No. Thank you. The officers did testify they had some level of concern about an unholstered and potentially loaded weapon discharging. I don't know how reasonable that is. I thought they were talking about their own weapons. Didn't Officer Ortiz have his own weapon unholstered, and that's why he cuffed folks? No, I was referring to the weapon in the backpack. Okay. Whether a fully manual weapon of this kind would actually pose a threat, you know, if it were bumped in a backpack or something is not clear to me, frankly. It's not part of the record either. And given Wisconsin's new law about public concealed carry, that sort of safety concern would seem to apply to anybody walking around in public, right? Well, yes, and while we're on that subject, Your Honor, I would just point out that the concerns that the court had in Williams were that the idea was that there were some rowdy individuals with a gun. That wasn't enough in light of Wisconsin law to justify detaining them. What we have here is very different. We have an individual who had been reportedly involved in a burglary in just a few minutes. Sure, and I don't think anybody is disagreeing about whether the Terry stop or even frisk were authorized here. The issue is a further search. Right. Our argument rests principally on this notion of accessibility that Judge Sykes and Mr. Stiller were talking about before. And the government and the defendant have a basic disagreement about what Michigan B-Long means in this context. I understand the opinion to say that when you have a temporary detention, the potential risk to the public is greater than in an arrest situation because the individual is not going to be held on a permanent basis, going to be released. And here, the context of that was you're on the threshold of a preschool with people in the parking lot. Let's talk about it. You obviously want to emphasize the preschool. All of us know this was five months after the Newtown crimes. Everybody has a visceral reaction to that. But I assume you're not arguing for a preschool-specific exception here. No. And your reasoning would be the same if we were talking about if this incident had occurred at a sidewalk by an airport, near a government building, sports arena, shopping center, movie theater, any number of places, right? Same kind of argument could be made. If there's a danger to the public that's reasonable, yes. Well, let's take these facts. You've got reasonable suspicion of somebody carrying a gun. You've got reasonable suspicion of a crime. It turns out that there wasn't one. But is that enough to open everybody's luggage, personal effects, and do a full-blown personal search beyond a frisk? Well, again, Michigan v. Long seems to say yes. Does it depend on whether the place in question is a prohibited place in which to carry a gun? Under Wisconsin law? Well, we do have to look at this through that lens because the reason that they opened the backpack was to look for a gun. Yes. That they had been told was in there. And the reason that the officer offered for doing that was because he was concerned that Leo was going to go into the Head Start school. And so, I mean, it seems at least relevant whether a Head Start school is a prohibited place and whether the rule that you're asking for, to the extent that this case is going to stand for a rule, involves a prohibited place in which to carry a gun. Well, I'm quite sure that it is a prohibited place, Your Honor. Wasn't that disputed between the parties in the district court? It's not briefed for us. I'm not sure it's clear from the record. I'll say that much. My understanding of federal law is weapons in schoolyards and so on are not permitted. Well, the question is what counts as a school. And Judge Clavert apparently had debate in front of him and decided he didn't need to decide that issue. Right? I'm not sure it's necessary to resolve this case to know precise legal status of weapons in a preschool. Nor do I think you can entirely detach the fact that this occurred on the threshold of a school. Again, I'm not trying to appeal to emotion. Of course not. I'm saying there's a public safety concern here that's very legitimate. There's always a public safety concern in Fourth Amendment cases, right? And we've got Riley telling us warrantless searches are presumptively unreasonable unless you can point to an established exception. And I'm looking for that exception. And my response, Your Honor, respectfully, is that Terry and Michigan v. Long create the exception that's necessary. Do you agree that, well, I had a conversation with your opposing counsel about whether those suspects were in police control and cuffed at the time of those searches and whether the weapons were actually accessible. These clearly were not. This backpack clearly was not. That's correct, and I'm not disputing that. Our argument rests on this idea in Michigan v. Long, which Justice Scalia acknowledged in his opinion in Gantt, that the risk comes about because it's a temporary detention, because it's going to come to an end. And unlike an arrest where the person is parted from the property and that concern does not exist. Okay, so let me get this straight. There's less of a threat if there's an arrest, right? If Mr. Leo is just walking down the street, he keeps whatever's in his backpack, right? He can't be stopped, frisked, searched unless you've got – Is he just walking down the street or is he just – Just walking down the street. Yes. Public safety would be better served if he could be searched, right? Well, arguably public safety would be better served if everybody could be searched. I'm obviously not advocating that at all. What we have here is an individual who had been reportedly involved in the burglary, who refused to stop when he was asked to do so, and the officers think there's a gun in the backpack. Right. And they stop him, they frisk him, and they don't find anything, and then they don't get a warrant. Could you compare the facts we've got here, Mr. Koenig, to Dickerson? It is where the Supreme Court found that a frisk was permissible, but that manipulation of the crack rocks, the little foil package, if I remember correctly, in the pocket was not permissible. That seems a lot less intrusive than what happened here. Well, I'm not sure that it speaks to our situation at all. It was an abuse, or the court perceived it as an abuse, of the pat-down concept because, as I understand that case, the manipulation that occurred occurred after the officer had determined there wasn't a weapon, and really there was no justification at that point for what the officer was doing in terms of public safety or officer safety, for that matter. Here I would argue that that public safety and officer, well, certainly the public safety concern was present. Public safety, if you know he's not, once it's determined there's no burglary, and if you don't know that he's a felon, there's nothing in Wisconsin law that prohibits him from carrying that gun around, right? My understanding is that none of that was known until later, and that we assess the reasonableness of the conduct at the time it occurred. At the time it occurred, they did not have knowledge. At the time it occurred, he's in complete police control with no access to that backpack. That's correct, Your Honor. Thank you very much. We'd ask you to affirm based on Judge Clovert's reasoning. Thank you, Mr. Koenig. Mr. Stiller, one minute. On the issue of geographic location, indeed, whether this was a protected schoolyard or not was litigated to some extent in front of Judge Clovert. My memory is not crystal clear. In his order denying Leo's suppression motion, he affirmatively chose not to address that issue. It's our position that because this was a preschool, it didn't match the legal definition of school for purposes of— Right. It's not categorically a protected place in which weapons are prohibited, but it may be situationally because, as I understand, Wisconsin law places of public accommodation and other places that are not covered by a prohibited place statute can post. They declare themselves gun-free zones, essentially, by saying we don't allow guns in, so lock your gun up in your car or don't bring it into our store or don't bring it into our— Office buildings. Et cetera. And this Head Start school may have been such a place, we just don't know the answer to that. The record is silent on that. As a factual matter. Correct. Accessibility, it's crucial. Long flows from Terry, and Terry was focused on the idea that when an officer is in close investigative proximity with a citizen believed to be armed and dangerous, the officer has that limited pat-down authority to explore the issue in relatively non-intrusive terms. But part of that equation also is that if the suspect is to be released back into the community without an arrest, and that's always a possibility, in fact, maybe a probability, the officer is entitled to consider the fact that for at least some duration of time the suspect is going to be in proximity to the officer, and if there's reasonable suspicion of armed and dangerous, then that factor is taken into consideration. If we embrace that reasoning, what we essentially do in light of Gantt is that we take the reasonably suspected and give them fewer privacy rights than those who are formally arrested. I don't think that's what Terry contemplated. Thank you. All right. Thank you, Mr. Stiller. We'll take the case under advisement. I'm going to call the fourth case of the day, U.S. v. Quinault.